### In re JR. FOOD MART OF ARKANSAS, INC.

**Bankruptcy No. 90–50419S.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Sept. 18, 1996.

Allen W. Bird II, Steven D. Durand, Rose Law Firm, Little Rock, AR, for debtor.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the U.S. Trustee's Motion to Compel Payment of Quarterly Fees, filed on June 10, 1996, and the debtor's Motion for an Order Closing the Case, filed on July 4, 1996, in which the debtor requests entry of an Order *nunc pro tunc.*

This case, originally closed by the clerk on April 18, 1994, was reopened on November 16, 1995, at the debtor's request in order to file an adversary proceeding. The adversary proceeding has been suspended, by Order entered November 20, 1995, pending certain state court litigation. Accordingly, the case remained open, and, pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees payable to the U.S. Trustee are now accruing. The U.S. Trustee seeks payment of the quarterly fees and the debtor requests that the case be closed in order that no further fees accrue. In addition, the debtor requests that the Order closing the case be entered *nunc pro tunc* to November 20, 1995, in order that it be absolved from paying any fees.

The debtor initially contested whether any fees were due. On January 26, 1996, Congress enacted the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38, amending 28 U.S.C. § 1930(a)(6) to provide:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in Treasury, in each case under Chapter 11 of Title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6).[1] Prior to this amendment, the statute provided for the fee to be paid "until a plan is confirmed or the case is converted or dismissed, whichever occurs first." Thus, Congress amended the statute to provide for payment of the fees during pendency of the case, not merely until confirmation of the plan. The amended statute applies to all cases pending under Chapter 11 on January 27, 1996. Since the Chapter 11 case of Jr. Food Mart of Arkansas, Inc. was an open case, quarterly fees began to accrue for the first quarter of 1996 and all subsequent quarters until the case converted, was dismissed, or, presumably, successfully reorganized.[2]

This case should be closed and retroactive relief granted. The Court has the

---

1. Finding the amendment is tortuous and evidences the maxim that one should never watch the making of sausage or the law. In summary, Pub.L. No. 104–99 amends Pub.L. No. 104–91 by enacting into law portions of a house report. The law became effective when the President signed it on January 27, 1996.

   The amendment is found in Section 211 of Pub.L. No. 104–99:

   > Public Law 104–91 is amended by inserting after the words "the protection of the Federal judiciary in section 101(a)", the following: "to the extent and in the manner and", and by inserting at the end of the paragraph containing those words, but before the semicolon, the following:
   > ": Provided, That, with the exception of section 114, the General Provisions for the Department of Justice included in title I of the aforementioned conference report are hereby enacted into law".

   Section 101(a) of Pub.L. No. 104–91 references House Report 104–378. Section 111(a) of the referenced House Report states:

   > Section 1930(a)(6) of title 28, United States Code is amended by striking "a plan is confirmed or".

H.R.Conf.Rep. No. 378, 104th Cong., 1st Sess. 15–25 (1995), *printed in* 141 Cong.Rec. H13874–01, H13878 (1995).

2. This statute presents an absurdity. The statute provides for payment of a fee until the Chapter 11 case is dismissed or converted. However, not all Chapter 11 cases conclude by dismissal or conversion. Indeed, a *successful* Chapter 11 case is neither dismissed nor converted. Rather, a plan is confirmed and, upon substantial confirmation, a Final Decree is entered whereupon the clerk administratively closes the case. Neither the *Final Decree* nor the *administrative closing* of the case is a dismissal or conversion. Dismissal and conversion are specific judicial acts which have specific legal consequences, neither of which are invoked when a Chapter 11 case has been successfully completed. However, since the statute imposes a fee, *payment of which ceases only upon dismissal or conversion*, the plain language of the statute arguably could require a successfully reorganized debtor to pay the quarterly fee to the U.S. Trustee in perpetuity. While a Court is required to construe a statute so as to give it its plain meaning, the Court need not apply an absurdity. *United States*

authority to close or dismiss a case although an adversary proceeding may remain pending. While dismissal of the case usually effects a dismissal of all pending adversary proceedings, *Stardust Inn, Inc. v. Doshi (In re Stardust Inn, Inc.)*, 70 B.R. 888, 890 (Bankr.E.D.Pa.1987), dismissal of the case does not *mandate* dismissal of adversary proceedings, *In re Pocklington*, 21 B.R. 199, 202 (Bankr.S.D.Cal.1982). The bankruptcy court has the power to retain jurisdiction over an adversary proceeding despite dismissal of the case. *Stardust Inn, Inc.*, 70 B.R. at 890. Accordingly, the Court may dismiss the bankruptcy case but retain jurisdiction over the pending adversary proceeding. Accordingly, the case could have been closed in November 1995 when the Court denied a request for injunction and suspended the adversary proceeding.

■■■ The primary issue as presented by the parties is whether the debtor is entitled to the retroactive relief. Both parties describe this as relief *nunc pro tunc*. The U.S. Trustee argues that the entry of such an order should be limited "to its traditional remedial function of recording an order which was actually made by the Court on the date to which the *nunc pro tunc* order is to relate back." While it is true that the concept of *nunc pro tunc* applies only to record an order never properly entered,[3] the modern authority is not so limited. The Court does not believe that the narrow concept encompassed by the phrase is the appropriate doctrine in this case. Rather, the debtor is simply requesting retroactive relief which this Court has the authority to provide, upon a proper showing. The case law is replete with examples of entry of *nunc pro tunc* orders in the bankruptcy context, particularly with respect to retention of professionals and fee applications. Another area in which an order may grant relief retroactively is a motion for retroactive relief from the stay. *Compare In re Kissinger*, 72 F.3d 107, 109 (9th Cir.1995); *In re Burrell*, 186 B.R. 230 (Bankr.E.D.Tenn.1995).

■■■ Any form of retroactive relief, whether it be approval of employment of a professional person, retroactive relief from stay, or, as in this instance, re-closure of the case in order to avoid a subsequently-imposed fee, should not be lightly granted. *See In re Kissinger*, 72 F.3d 107, 109 (9th Cir. 1995) ("Retroactive annulment should be 'applied only in extreme circumstances.'"). In order to obtain retroactive relief there must (1) be entitlement to the relief in the first instance, *i.e.*, the relief must be appropriate as of the date to which it is to relate back; and (2) the circumstances must be extraordinary. *Cf. Matter of Arkansas Company, Inc.*, 798 F.2d 645 (3d Cir.1986).

The Court believes that both elements have been met in this case and the case should be closed, as of November 20, 1995. Although this case was reopened on November 16, 1995, and an adversary proceeding, *Jr. Food Mart of Arkansas, Inc. v. W.T. Paine, M.D.*, No. 95–5014, filed on that day, the adversary proceeding was placed in suspension on November 20, 1995, after the Court denied a motion for preliminary injunction and determined that certain state court matters should be concluded before

---

*v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Inasmuch as the plain language of this statute reaches an absurd result, a logical construction would require payment of the U.S. Trustee's quarterly fees until conversion, dismissal, *or until entry of the Final Decree.*

Under the language of the statute, entry of a Final Decree, rather than administrative closure of the case or confirmation of the plan, would be the appropriate point at which to terminate the trustee's fees because entry of the Final Decree is congruent to the judicial acts of dismissal or conversion. It also vastly diminishes or may terminate the court's and U.S. Trustee's need for involvement in the case. Termination of the fees at the point of confirmation is clearly inappropriate because by the amendment to the statute which deleted the phrase "a plan is confirmed," Congress clearly intended the fees to continue past plan confirmation. Finally, the administrative closing of the case would not be an appropriate point at which to terminate the fee because it imposes upon the debtor the burden of paying a fee to the U.S. Trustee pending performance by the clerk of the court of an administrative act.

The Court is not the first to find the plain meaning of this statute absurd. *See, e.g., In re C n' B of Florida*, 198 B.R. 836 (Bankr.M.D.Fla. 1996) (and cases cited therein) (amended statute applied only in "aborted" chapter 11 cases, not successful and substantially consummated cases even though the decree is not entered until later).

3. *See generally* 56 Am.Jur.2d *Motions, Rules, & Orders* § 44; 60 *C.J.S. Motions and Orders* § 57.

determination of the issues in the adversary proceeding. The main case remained open only because the adversary proceeding was pending, although the separate proceeding had been suspended. Thus, the relief, closure of the case, could have been effected on November 20, 1995, without prejudice to any party.

The Court also finds that the circumstances of this case are not only factually unique, but also extraordinary such that retroactive relief is appropriate. In this instance, the case, a confirmed Chapter 11 case, was reopened solely for the purpose of filing an adversary proceeding for a determination of the discharge injunction. Inasmuch as the Court suspended ruling on the adversary proceeding pending state court litigation, neither the Court nor the U.S. Trustee has been required to administer either the case or the adversary proceeding in any respect. Only after the case was reopened and the adversary proceeding suspended did Congress amend 28 U.S.C. § 1930 to require an already reorganized Chapter 11 debtor to pay a fee arguably into perpetuity. Upon realization that this fee would now be imposed upon the debtor because the case was opened for administrative reasons, the debtor moved for retroactive relief. The Court finds that this case should be closed as of November 20, 1995. Accordingly, it is

**ORDERED** as follows:

1. The debtor's Motion for an Order Closing the Case, filed on July 4, 1996, is GRANTED. The clerk is directed to close this bankruptcy case as of November 20, 1995.

2. The Court retains jurisdiction over the adversary Proceeding, *Jr. Food Mart of Arkansas, Inc. v. W.T. Paine, M.D.*, No. 95–5014 (Bankr.E.D.Ark. filed Nov. 15, 1995), and that adversary proceeding shall remain open.

3. The U.S. Trustee's Motion to Compel Payment of Quarterly Fees, filed on June 10, 1996, is DENIED.

**IT IS SO ORDERED.**